UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TYRECE FLEMING,

       Plaintiff,

v.                               Case No. 3:20-cv-853-MMH-JRK

DR. ESPINO,

       Defendant.

_____

## **<u>ORDER</u>**

### I.    **Status**

Plaintiff Tyrece Fleming, an inmate of the Florida penal system, initiated this action on July 27, 2020,[1] by filing a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Doc. 1). Fleming is proceeding on an amended complaint (Amended Complaint; Doc. 6), in which he names Dr. Espino, in his individual capacity, as the sole defendant. Fleming alleges Dr. Espino sexually assaulted him and was deliberately indifferent to a serious medical need in violation of the Eighth Amendment. As relief, Fleming seeks "the discontinuance of improper practice(s)," $50,000, and that the Court refer this matter to the state for criminal prosecution. Before the Court is Espino's Motion for Summary Judgment and Incorporated Memorandum of Law

---

[1] <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266 (1988) (mailbox rule).

(Motion; Doc. 23), with exhibits.[2] Fleming opposes the Motion. <u>See</u> Motion of Counter-Affidavits in Response to Defendant's Summary Judgment (Response; Doc. 28). Espino filed a reply. <u>See</u> Defendant's Reply in Support of Summary Judgment (Reply; Doc. 29). The Motion is ripe for review.

## II.    Fleming's Allegations

In his Amended Complaint,[3] Fleming alleges that on February 18, 2020, he went to Espino's office because he had been defecating blood. Amended Complaint at 5. Espino informed Fleming that he was going to insert his finger into his anus to see if blood was present. <u>Id.</u> According to Fleming, he observed "Espino put AmerFresh Toothpaste on his finger." <u>Id.</u> Concerned, Fleming asked Espino if he was going to place toothpaste in his anus. <u>Id.</u> Fleming asserts that Espino told him to bend over and then repeatedly "rammed his fingered covered in toothpaste in the Plaintiff's rectum." <u>Id.</u> Espino then purportedly moved his finger back and forth in Fleming's rectum while Espino

---

[2] On June 22, 2021, Espino supplemented his exhibits with a redacted copy of Fleming's medical records. <u>See</u> Doc. 27.

[3] The Amended Complaint is not verified. It is neither sworn nor accompanied with an unsworn declaration under penalty of perjury that the alleged facts are true and correct. <u>See</u> 28 U.S.C. § 1746; <u>see also</u> <u>Stallworth v. Tyson</u>, 578 F. App'x 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [the plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [the plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

stated he neither felt nor saw any blood. <u>Id.</u> at 14. Espino took his finger out, showed it to Fleming, and said, "See, no blood now get out." <u>Id.</u>

During the alleged assault, Fleming states that he was shackled and unable to move or defend himself. <u>Id.</u> at 5. He complained about the alleged assault to two correctional officers who were standing near the door, but the officers did nothing but threaten to use force to take him back to his cell if he did not return willingly. <u>Id.</u> Correctional officers removed Fleming from Espino's office and returned him to his cell. <u>Id.</u> at 12. Once at his cell, Fleming again complained to the staff about the alleged sexual assault and the failure of correctional staff to investigate it and obtain evidence. <u>Id.</u> at 15. Captain Blinch reported Fleming's allegation. <u>Id.</u> at 15-16.

According to Fleming,  days later he complained that the toothpaste had "burned the skin from around his anus and inside his rectum and that the skin and blood was stuck to the inside of his boxers." <u>Id.</u> He states that he did not clean himself because he believed he needed to preserve evidence of the sexual assault. <u>Id.</u> However, after days of not showering, Fleming explains he had to start bathing in the toilet to get rid of the infection. <u>Id.</u>

On March 1, 2020, a state representative, Kimberly Daniels, came to speak with Fleming about the alleged assault. <u>Id.</u> at 12-13. Daniels promised him that she would investigate his case once she returned to her office. <u>Id.</u> at 13. Later that month, Fleming called the Gulf Coast Sexual Assault Program

and discussed the incident with a victim advocate who then reported it to the inspector general. Id. As a result of the incident, Fleming alleges he suffered burned skin inside of his rectum and around his anus that went untreated. Id. at 5.

## III. Summary Judgment Standard

Rule 56 instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[4] An

---

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). However, "a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When the non-moving party bears the burden of proof on an issue at trial, the moving party need not 'support its motion with affidavits or other similar material negating the opponent's claim,' Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), in order to discharge this initial responsibility." Gonzalez v. Lee Cty. Hous. Auth., 161 F.3d 1290, 1294 (11th Cir. 1998). Instead, the moving party simply may demonstrate "that there is an absence of evidence to support the nonmoving party's case." Id.

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by

5

depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## IV.   Analysis and Conclusions

In the Motion, Dr. Espino argues that he is entitled to summary judgment for four reasons:   (1) Fleming failed to exhaust administrative remedies before filing suit; (2) Fleming made misrepresentations to the Court in the Amended Complaint; (3) the Court should use its authority under 28 U.S.C. § 1915(e)(2)(B)(i) to dismiss the claims as "clearly baseless"; and (4) Fleming cannot prove Espino sexually assaulted him or was deliberately indifferent to a serious medical need. Motion at 1-2. The Court finds it

6

necessary to only address arguments one and four below, as they are dispositive.

## A.    Exhaustion

Espino contends that Fleming failed to exhaust his administrative remedies because Fleming never filed an appeal concerning the alleged sexual assault or the medical treatment he received. Motion at 10-11. To the extent Fleming argues the grievance process was unavailable to him, Espino notes that Fleming filed three grievances appeals while being housed at Florida State Prison, which shows Fleming did have access to the grievance process. Id. at 11. Espino acknowledges that Fleming alleges in the Amended Complaint that he filed the necessary grievances at Florida State Prison. Id. However, Espino contends this is a misrepresentation because at the time Fleming would have filed a formal grievance he was not housed at Florida State Prison. Id. at 11-12. Last, Espino argues that although the Office of Inspector General (OIG) investigated Fleming's sexual assault allegation that does not constitute proper exhaustion because the investigation did not stem from the grievance process. Id. at 12-13. Instead, Espino notes that the OIG investigated because of a phone call to the Gulf Coast Sexual Assault Program and reports from Captain Blitch and Lieutenant Young, not the grievance process. Id.

In Response, Fleming argues that between February 19th and 24th of 2020, he filed grievances, but prison staff lied about never receiving them. Response at 12. He requests that the Court demand audio and video recordings from the prison to prove his contentions that he dropped off grievances. Id. In any event, he asserts that because he never received a response, he was allowed to move to the next level of the grievance process. Id. Regarding any misrepresentations in the Amended Complaint, Fleming contends that any error was the result of the Court denying his motion to appoint counsel. Id. at 12-13.

### Motion to Dismiss Standard[5]

The determination of whether an inmate exhausted his available administrative remedies prior to pursuing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (citation omitted). In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's

---

[5] While Espino has raised the exhaustion defense in a summary-judgment motion under Rule 56, rather than a Rule 12 motion, the Court must treat the motion as one seeking dismissal. See Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008).

World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of

9

the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[6] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

---

[6] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

## **PLRA Exhaustion**

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Fleming is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant, 530 F.3d at 1374. Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[7] 286 F.3d, at 1024 (emphasis in original).

---

[7] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

As such, the United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Fleming] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See <u>Turner</u>, 541 F.3d at 1081. In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541

F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam). "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

### Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member responsible

for the specific problem at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> FLA. ADMIN. CODE r. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> FLA. ADMIN. CODE r. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time limits apply. Informal grievances must be received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. <u>See</u> FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> FLA. ADMIN. CODE r. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the Secretary must be received within fifteen days from the date

14

the response to the formal grievance is returned to the inmate. See FLA. ADMIN. CODE r. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-(y). Some of the reasons for returning a grievance are: untimeliness; the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a supplement to a previously-submitted grievance that has been accepted for review; and the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or he did not provide the required attachments. See FLA. ADMIN. CODE r. 33-103.014(1).

**Fleming's Exhaustion Efforts**

In the Amended Complaint, Fleming alleges that prior to the February 18th incident, he filed an informal and a formal grievance on an unrelated matter. Amended Complaint at 14. As to the events at issue here, Fleming asserts that immediately following the alleged sexual assault, he made verbal

15

complaints to Captain Blinch and Lieutenant Young and they reported it under the Prison Rape Elimination Act (PREA). Id. at 15-16. Fleming also asserts that on February 20, 2020:

> Camera[s] will show the grievance lady stop at my cell and show her accepting an informal grievance from me and placing it [in] the grievance box she was carrying. That grievance was addressed to the Warden. No response as of date.

Id. at 16. He maintains that he submitted grievances to the warden, assistant warden, "security," "mental health," and the secretary of the Florida Department of Corrections. Id. at 7. However, he never received a response to any of those grievances. Id. Fleming asserts that "none of Plaintiff['s] grievances and appeal [sic] were answered in a timely matter and was said to have never been received." Id. Fleming alleges that on March 1, 2020, a state representative visited him. Id. After that visit, Fleming asserts that prison staff filed a false disciplinary report against him as retaliation for talking with the state representative. Id. at 17. He broadly avers that prison staff are also "trying to cover up what happened[.]" Id.

Espino concedes that under the first step of the Turner analysis, Fleming has alleged proper exhaustion. Motion at 10. However, he argues that under the second step, there is no evidence to support Fleming's contention that he exhausted his remedies as to the claims at issue here. Id. at 10-13. Based on the allegations in the Amended Complaint that Fleming's grievances went

16

unanswered and Espino's concession, the Court finds that Fleming has satisfied step one of the <u>Turner</u> analysis. Thus, the Court proceeds to examine the available evidence to make a factual determination as to whether Fleming properly exhausted his administrative remedies.

According to Fleming, he placed an informal grievance related to the claims at issue here in the grievance lockbox on February 20, 2020, but he did not receive a response. He provides no copies of this grievance or other evidence in support. Neither does he provide evidentiary support for his conclusory claims that he submitted grievances to other agencies. Espino on the other hand has provided records of all of Fleming's administrative appeals while at Florida State Prison. Doc. 23-6. Upon review, none of those appeals addressed the issues raised in the Amended Complaint. <u>Id.</u> In his Response, Fleming contends that prison officials lied about not receiving his grievances and the Court should request the video footage to prove he handed over grievances to prison officials. Response at 12. However, it is Fleming's duty, not the Court's, to provide evidence in support of his contentions. Fleming could have requested those videos during the discovery period, yet he did not.

Fleming's conclusory allegations that prison officials thwarted his ability to properly exhaust his claims is insufficient to overcome Espino's evidence. The evidence shows that Fleming was able to submit other grievances and appeals without hindrance, Doc. 23-6, as well raise complaints under the

PREA, Doc. 23-5. Moreover, two correctional officers reported his allegations to the OIG, Doc. 23-5, which undermines his claim that correctional officers were lying or otherwise attempting to prevent him from submitting grievances about the alleged assault or covering it up. See Kozuh v. Nichols, 185 F. App'x 874, 878 (11th Cir. 2006) (finding a failure to exhaust where plaintiff provided no evidence to support his allegation that prison officials thwarted him from bringing grievances and where evidence showed plaintiff filed other grievances and requests). Based on the above, the Court finds that Fleming failed to submit an appeal grievance. Thus, he did not complete all required steps of the grievance procedure and failed to exhaust his administrative remedies as to the claims raised in the Amended Complaint. See Woodford, 548 U.S. at 90.

To the extent Fleming argues the OIG's investigation demonstrates proper exhaustion, the evidence does not support this contention. Espino attached documentation from the investigation that shows OIG initiated the investigation because Fleming reported his claims to two correctional officers who then reported it to the OIG and because Fleming called a prison sexual assault hotline. Doc. 23-5 at 3-4, 10, 12, 14. There is no evidence supporting even an inference that the OIG's investigation was a result of Fleming filing a grievance. As such, the OIG's investigation is not relevant to the issue of exhaustion. Compare Pavao v. Sims, 679 F. App'x 819, 825 (11th Cir. 2017) (quoting Dimanche, 783 F.3d at 1210) ("Pavao's efforts to seek redress from the

18

Florida state courts or the Inspector General of the FDOC are not relevant to the question of exhaustion because they are not part of the prison grievance procedure, and therefore are outside the 'boundaries of proper exhaustion.'"); and Schlicher v. Fla. Dep't of Corr., 399 F. App'x 538, 539 (11th Cir. 2010) (rejecting the plaintiff's argument that writing letters to the Secretary of the FDOC, a federal judge, and the inspector general, and making verbal complaints to various prison officials, were sufficient to satisfy the exhaustion requirement); with Luckey v. May, No. 5:14-cv-315-MW-GRJ, 2016 WL 1128426, at *11 (N.D. Fla. Feb. 17, 2016) (concluding plaintiff properly exhausted where referral of plaintiff's grievances initiated Inspector General Office's investigation); and Lanier v. Smith, No. 3:08-cv-833-J-12JRK, 2009 WL 1758904, at *1 (M.D. Fla. June 19, 2009) (same). In light of the above, the Motion is due to be granted to the extent Fleming failed to exhaust his administrative remedies.

## B.    Eighth Amendment Allegations

Even assuming Fleming did properly exhaust his administrative remedies as to these claims, Espino is entitled to summary judgment on Fleming's claims that Espino violated his constitutional rights. As to his deliberate indifference claim, Fleming provides no evidence that he was suffering from rectal bleeding as he asserts in his unverified Amended Complaint. Moreover, even if there was a serious medical risk, the undisputed

19

medical records show that Espino did not ignore the risk and concluded after examination that no risk was present. Regarding Fleming's cruel and unusual punishment claim related to the alleged sexual assault, he points to no evidence to support a finding that any sexual assault occurred. Instead, the evidence before the Court reflects that Espino's rectal exam was done to further a medical end and was within the realm of medical care necessary to treat the alleged condition.

Pursuant to the Eighth Amendment of the United States Constitution, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id. The challenged condition

> must be extreme and must pose an unreasonable risk
> of serious damage to the prisoner's future health or
> safety. Id. The Eighth Amendment guarantees that
> prisoners are provided with a minimal civilized level
> of life's basic necessities. Id.
>
> Under the subjective component, a prisoner
> must allege that the prison official, at a minimum,
> acted with a state of mind that constituted deliberate
> indifference. Id. This means the prisoner must show
> that the prison officials: (1) had subjective knowledge
> of a risk of serious harm; (2) disregarded that risk; and
> (3) displayed conduct that is more than mere
> negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th
> Cir. 2003).

Id. at 969-70. "To be cruel and unusual punishment, conduct that does not

purport to be punishment at all must involve more than ordinary lack of due

care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319

(1986).

As it relates to medical care, "[t]he Supreme Court has interpreted the

Eighth Amendment to prohibit 'deliberate indifference to serious medical

needs of prisoners.'" Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016)

(quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Eleventh circuit has

explained that

> To prevail on a deliberate indifference claim, [a
> plaintiff] must show: "(1) a serious medical need; (2)
> the defendants' deliberate indifference to that need;
> and (3) causation between that indifference and the
> plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d
> 1291, 1306-07 (11th Cir.2009). To establish deliberate
> indifference, [a plaintiff] must prove "(1) subjective

21

> knowledge of a risk of serious harm; (2) disregard of
> that risk; (3) by conduct that is more than [gross]
> negligence." <u>Townsend v. Jefferson Cnty.</u>, 601 F.3d
> 1152, 1158 (11th Cir.2010) (alteration in original). The
> defendants must have been "aware of facts from which
> the inference could be drawn that a substantial risk of
> serious harm exist[ed]" and then actually draw that
> inference. <u>Farrow v. West</u>, 320 F.3d 1235, 1245 (11th
> Cir.2003) (quotation omitted).

<u>Easley v. Dep't of Corr.</u>, 590 F. App'x 860, 868 (11th Cir. 2014). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" <u>Nimmons v. Aviles</u>, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir.1991)); <u>see also</u> <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem). However, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986) ("As we held in <u>Daniels</u>, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under

the Eighth Amendment." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." <u>Bismark v. Fisher</u>, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting <u>Waldrop</u>, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Espino provided Fleming's medical records regarding the incident. Doc. 27-1. The records show that on January 28, 2020, Fleming refused Pepto-Bismol to treat his stomach pain because he felt it was ineffective. <u>Id.</u> at 2, 8, 23. Espino's notes from the February 18, 2020 examination reflect that Fleming complained of bleeding since the night before the examination. <u>Id.</u> at 7. This is the first and only report of rectal bleeding in the medical documentation provided. Espino conducted a rectal exam and notated "No

blood on exam finger," found no objective indicators that Fleming's rectum was bleeding, prescribed Tums for his stomach pain, and ordered a stool sample. Id. at 7, 18-19. On February 26, 2020, Fleming refused to sign a refusal of health care form reflecting that he turned down a hemoccult lab test that would have confirmed the presence of blood. Id. at 1. On March 2, 2020, a nurse examined Fleming based on his allegations of staff abuse. Id. at 10-11. Her summary reflects "no injures noted upon examination." Id.

Espino also provided sworn statements in support of his request for entry of summary judgment. In his declaration, Espino asserts under oath that he applied lubricant to his fingers so as to perform a rectal exam based on Fleming's complaint regarding rectal bleeding. Doc. 23-3 at 1-2. Espino further states that toothpaste was not kept in the medical supply drawer. Id. at 2. Espino avers that based on the exam, there was no evidence of bleeding and that based on his medical judgment no treatment was required. Id. The sworn declaration of Sergeant Christopher Langkau reflects similar facts. According to Langkau, Fleming consented to a rectal examination to address his complaint of rectal bleeding. Doc. 23-4 at 2. Langkau observed Espino apply lubricant, not toothpaste, to his fingers to examine Fleming. Id. The OIG report corroborates these declarations. It reflects that they found no evidence to substantiate Fleming's allegations concerning toothpaste, that Fleming lied in

24

hopes of getting money, and Espino's conduct during the exam was in line with the performance of his duties. Doc. 23-5.

The undisputed evidentiary record before the Court reflects that Fleming did not have a serious medical issue related to rectal bleeding. Nothing before or after the February 18, 2020 incident shows that Fleming complained about rectal bleeding. The examination at the time revealed no indications of rectal bleeding. Fleming refused testing that would have provided additional information on the matter. As Fleming did not have a serious medical risk, he cannot demonstrate deliberate indifference under the Eighth Amendment. Moreover, even if Fleming could establish such, the evidence shows that Espino did not ignore his condition but rather investigated via a rectal exam and a request for a hemoccult test. Espino found no observable signs of bleeding and thus could not treat something that did not exist. Fleming has failed to present any evidence creating a genuine issue of fact as to the existence of rectal bleeding before, during, or after the incident. On this record, no reasonable jury could find that Espino was deliberately indifferent to Fleming's rectal bleeding.

Likewise, Fleming's claim of sexual assault is not supported by evidence. Espino provided two sworn statements attesting to the use of lubricant, not toothpaste, during the rectal exam and that Fleming consented to the exam. Fleming points to no evidence suggesting Espino sadistically or maliciously

conducted the rectal exam. Instead, the record shows only that the rectal exam had a legitimate medical purpose, to determine if Fleming was bleeding from his rectum. Even Fleming's own contentions in the Amended Complaint, outside of the toothpaste allegation, show that Espino conducted the rectal examination because of Fleming's complaint about bleeding. Notably, Fleming, as the party opposing summary judgment, is not entitled to rest upon mere allegations contained in the Amended Complaint. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995); Walker v. Darby, 911 F.2d 1573, 1577-78 (11th Cir. 1990). Instead, he is required to go beyond the Amended Complaint and, through affidavit, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that a genuine issue remains for trial. See Jeffery, 64 F.3d at 593-94. Although advised of his obligations in responding to a motion for summary judgment, Fleming has failed to do so. As such, he has failed to demonstrate a genuine issue of material fact for trial. On the record before the Court no reasonable jury could conclude there was an objectively unreasonable risk to Fleming's health or safety or any subjective intent on Espino's part to sexually assault Fleming.

In consideration of the foregoing, it is now

**ORDERED**:

1.     Dr. Espino's Motion for Summary Judgment (Doc. 23) is **GRANTED.**

2.     The Clerk of Court shall enter judgment in favor of Dr. Gonzalo Espino, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of November, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:
Tyrece Fleming #383708
Counsel of Record